#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JACK SMITH, | ) |
|       Plaintiff, | ) |
| vs. | ) Case No. 14-cv-413-TLW |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>Administration, | ) |
|       Defendant. | ) |

### OPINION AND ORDER

Plaintiff Jack Smith seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for Supplemental Security Income ("SSI") payments under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. § 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), and Fed. R. Civ. P. 73, the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 14). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

### STANDARD OF REVIEW

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute

its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a fifty-one year old male, applied for Titles II and XVI benefits on March 28, 2012. (R. 189-97; 198-201). He alleged a disability onset date of January 1, 2000. (R. 189; 198). Plaintiff claimed that he was unable to work due to problems with his back, knee, and shoulder; spinal stenosis; memory loss and concentration problems; depression and anxiety. (R. 210). Plaintiff's claims for benefits were denied on November 28, 2012, and were denied again on May 9, 2013. (R. 86, 87, 138-45; 134, 135, 147-52). Plaintiff requested a hearing before an administrative law judge ("ALJ"). The ALJ held the hearing on November 19, 2013. (R. 26-53). During the hearing, plaintiff amended his alleged onset date to March 6, 2012, effectively withdrawing his Request for Hearing on Title II benefits. (R. 29-30). The ALJ issued a decision on January 16, 2014, denying plaintiff's claim for benefits. (R. 7-24). The Appeals Council denied review, and plaintiff appealed. (R. 1-5; dkt. 2).

**The ALJ's Decision[1]**

Plaintiff has not performed any substantial gainful activity since March 6, 2012, his alleged onset date, and he has the following severe impairments: "degenerative disc disease of the lumbar spine, fragmented tibial tuberosity of the knees, degenerative joint disease of the shoulders, and depression and anxiety." (R. 12-13). None of plaintiff's impairments meet or equal a listing. Id.

---

[1] Unless otherwise noted, the statements in this section reflect the ALJ's findings in her Decision, not the findings of this Court.

Plaintiff also complains of sciatic pain in his legs, toes, and hips. (R. 15). After plaintiff's back injury, he gained one hundred pounds, but he recently lost weight. Id. Plaintiff performs housework such as sweeping and mowing with a riding lawnmower for a maximum of 20-30 minutes, and grocery shopping with the use of an electric cart. Id. In March, 2012, plaintiff told Family and Children's Services that he was a caregiver for his parents, but at the ALJ hearing he recanted this statement and claimed that he misspoke. Id.

According to Dr. Brian Terry Smedley's medical report from June 15, 2012, plaintiff uses a cane, but he has "no atrophy, heel/toe walking was equal bilaterally, range of motion of the spine revealed no defect, and straight leg raise was negative." (R. 16). Additionally, all range of motion was within normal limits. Id. Dr. Smedley assessed plaintiff as having "chronic lumbar pain, bilateral shoulder pain, suspect NSAID induced gastritis, suspect NSAID induced nephropathy, chronic su[p]ratherapeutic NSAID use, hypertension, anxiety and depression." Id. The December 22, 2012 internist orthopedic examination, performed by Dr. Andrew Patchett, D.O., indicates mild pain findings, and plaintiff admitted to Dr. Patchett that he had "not sought care for his alleged pain." (R. 17). Based on the foregoing, plaintiff's pain allegations are "only partially credible." Id.

Anna L. Pina, APRN, found that plaintiff has chronic back pain, cholesterol problems, and a BMI of 40.9. (R. 18). She, however, concluded that these issues were managed with pain and cholesterol medication. Id.

The record does not support plaintiff's claims of disabling pain or plaintiff's self-limitations since plaintiff's doctors did not impose any limitations. Id. Also, plaintiff's statements regarding his impairments and their impact on his ability to perform work were not

3

entirely credible based on his life style and discrepancies between his claims and the medical reports. Id. Thus, plaintiff retains the RFC to:

> perform less than the full range of light work as defined in 20 CFR 416.967(b). Specifically, the [plaintiff] is able to lift and/or carry and push and/or pull 20 pounds occasionally and 10 pounds frequently, he is able to stand and/or walk 6 hours out of an 8-hour workday, sit 6 hours out of an 8-hour workday, and occasionally reach. Additionally, the [plaintiff] is able to perform simple routine tasks with superficial and incidental work-related interaction with co-workers and supervisors, but no significant public interaction required to complete job tasks.

(R. 14).

Plaintiff's past relevant work as a parts inspector exceeds his RFC. (R. 19). The testimony from the vocational expert establishes that plaintiff can perform the representative jobs of sorter (DOT # 753.587-010, unskilled, light exertion), hand packager (DOT # 753.687-038, unskilled, light exertion), and "assembly" (DOT # 706.687-010, unskilled, light exertion). (R. 20). Therefore, plaintiff is capable of performing other work that exists in significant numbers in the national economy, meaning that he is not disabled. Id.

**Plaintiff's Medical Records**

The ALJ's review of the medical evidence, with respect to the issues raised by plaintiff, was accurate and thorough. Plaintiff's only challenge to the ALJ's opinion relates to plaintiff's use of a cane and his obesity. To the extent that plaintiff's medical records address these issues, they are discussed within the analysis section below.

### ANALYSIS

On appeal, plaintiff raises two issues: (1) that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to take into consideration plaintiff's use of a cane; and (2) that the ALJ failed to properly consider plaintiff's obesity. (Dkt. 18 at 4).

4

**RFC Assessment**

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because the evidence in the record related to his use of a cane overwhelms the ALJ's implied finding that plaintiff's cane is not necessary. (Dkt. 18 at 4-6). Plaintiff first contends that his use of a cane to ambulate calls into question the ALJ's finding that he can stand and walk six hours out of an 8-hour day. Plaintiff next argues that his use of a cane negatively impacts his ability to perform light work. Finally, plaintiff argues that the vocational expert's testimony did not consider the impact plaintiff's cane would have on his ability to perform the jobs identified by the expert. (Dkt. 18 at 5). These arguments are unpersuasive, however, because plaintiff never presented evidence establishing the cane as a medical necessity and the medical record alone does not support the conclusion that the cane is a medical necessity as required by SSR 96-9p. Therefore, the ALJ was not required to consider the use of a cane in his RFC analysis.

According to SSR 96-9p, the RFC need only consider the use of a hand-held assistive device if it is medically required. Social Security Ruling 96-9p, while not requiring a prescription, requires "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p. Plaintiff relies on his own testimony, his parents' reports, and the examining doctors' observations to satisfy this requirement. Based on the language of SSR 96-9p, plaintiff's testimony and his parents' reports cannot be used to establish proper medical documentation. Thus, the reports of the medical doctors and mental health physicians are the determining factor in whether or not the cane is a medical necessity.

Plaintiff's doctors' reports fail to establish his need for a cane since all of the remarks regarding plaintiff's cane are observational and none establish a requirement for a hand-held

5

assistive device or describe a circumstance under which a hand-held assistive device is necessary. See Staples v. Astrue, 329 F. App'x 189, 192 (10th Cir. 2009) (unpublished).[2] More than generalized evidence showing its use is needed. Id.

In Staples, the claimant argued that "the ALJ erred by failing to consider and incorporate her use of a cane into his determination of her RFC." Id. She stated that the ALJ erred in declaring that the cane was not a medical necessity simply because she lacked a prescription. Id. The claimant had claimed during the ALJ hearing that she used a cane to walk and "always used the cane, both around the house and when she left the house." Id. She stated that her doctor told her to use the cane due to her balance and pain in her leg. Id. In addition, an examining doctor mentioned in his statement that she used a cane and another examining doctor procured a temporary handicap placard for her use. Id. The Tenth Circuit concluded that the claimant was correct in that SSR 96-9p does not require a prescription to establish medical necessity. Id. Thus, the ALJ erred in stating that the cane was not a medical requirement simply because there was no prescription. Id. However, the court stated that the issue would only require remand if a different conclusion would result from following the correct analysis. Id.

In considering the correct analysis, the Tenth Circuit acknowledged that the record indicated ongoing health problems as well as opinions suggesting permanent nerve damage in the claimant's leg. Id. The court also noted that claimant's doctor referenced her use of a cane in a report. Id. However, neither the claimant's ongoing health problems, nor the reference to the cane rose to the level of establishing the need for such a device. Id. In fact, the Tenth Circuit concluded that mention of the cane in one of the claimant's doctor's reports did not satisfy the requirement under SSR 96-9p because it neither established a need nor described the

---

[2] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

circumstance for which a hand-held assistive device would be needed. Id. On this basis, the court determined that no reasonable administrative factfinder would determine that the medical record established the cane as a medical requirement under SSR 96-9p. Id.

Here, the medical documentation in the record regarding the cane is as follows:

> Dr. Smedley: "gait is slow with moderate stability, but antalgic away from the right leg. He uses a cane to assist in ambulation." (R. 274).
>
> Dr. Smasal: "He appeared to be in pain and he used a cane to ambulate during the examination." (R. 286).
>
> Dr. Patchett: "Limp is present with assistance of cane." (R. 326).

Additionally, plaintiff mentions in his function report that he uses a cane but that his cane is not prescribed by a doctor. (R. 258).

Staples makes clear that plaintiff's testimony and the observations of his doctors that he used a cane do not establish that the cane is a medical necessity. Furthermore, the ALJ recognized that plaintiff uses a cane to assist in ambulation, but she relied on the medical record and his description of daily activities to determine his abilities when she formulated the RFC. She discussed thoroughly that while Dr. Smedley noted that plaintiff used a cane, the "musculoskeletal examination revealed no atrophy, heel/toe walking was equal bilaterally, range of motion of the spine revealed no defect, and straight leg raise was negative." (R. 16, 274). Thus, substantial evidence supports the ALJ's determination that plaintiff's cane was not medically necessary, and the RFC was consistent and did not conflict with the medical record.

**Obesity**

Plaintiff argues that the ALJ failed to properly consider his obesity because the ALJ did not mention or discuss obesity in her opinion. Plaintiff did not allege obesity as part of his

disability application; however, plaintiff raised the issue at the ALJ hearing, and there is evidence of obesity present throughout the medical record. (R. 31). Plaintiff cites 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00Q, stating that an adjudicator must consider the effects of obesity throughout the sequential evaluation process.

The Commissioner argues two points to counter plaintiff's argument. First, the Commissioner argues that there is no acceptable medical diagnosis of obesity in the treatment record. (Dkt. 22 at 7). The Commissioner is correct that obesity is never mentioned as a formal diagnosis.[3] However, as plaintiff mentions in his reply brief, SSR 02-01p allows for obesity to be established through evidence in the record. (Dkt. 24 at 2). Second, the Commissioner argues that the medical record is devoid of evidence suggesting functional limitations caused by obesity beyond that which would be assigned to someone who could perform light work. The Commissioner cites Jimison ex rel. Sims v. Colvin, 513 F. App'x 789, 798 (10th Cir. 2013) (unpublished) to support her position, stating that "[b]ecause 'there is no record indication of any functional limitations from [the claimant's] obesity or of any impairments possibly caused or exacerbated by her obesity that are inconsistent with the [RFC],' Plaintiff's argument should be rejected." (Dkt. 22 at 7).

In Jimison, the Tenth Circuit considered whether the ALJ erred in not addressing plaintiff's obesity in the RFC analysis. Id. at 793. The ALJ had identified obesity as a severe impairment and then failed to consider the claimant's obesity in formulating the RFC. See Jimison, 513 F. App'x at 791. The Tenth Circuit ruled that because the record did not indicate that claimant's obesity caused functional limitations, the ALJ did not have to consider it in the RFC Analysis. Id. at 793. The court reasoned that because obesity is an impairment (as opposed

---

[3] Although not a diagnosis, Johna Smasal, Ph.D. did observe that plaintiff "was an overweight Caucasian man" during his July 24, 2012 Psychological Consultative Examination. (R. 286).

8

to a functional limitation or restriction), when there is no evidence that the impairment creates a functional limitation, the ALJ is not required to consider it in the RFC or in a hypothetical to the vocational expert. Id. Here, while there is ample evidence in the record to support a diagnosis of obesity (see, e.g., R. 274, 286, 326, 337, 338, 339), there is no medical evidence referencing any functional limitations caused by plaintiff's obesity, and there is no evidence at all of such a limitation outside of that which plaintiff claimed during the hearing. Under Jimison, if there is no evidence that plaintiff's obesity causes a functional limitation, then the obesity need not be considered in the RFC analysis.

Moreover, this finding is supported by Keyes-Zachary v. Astrue, 695 F.3d 1156 (10th Cir. 2012). In Keyes-Zachary, the Tenth Circuit considered whether an ALJ's errors, such as failure to discuss an adverse side effect of a medication or failure to expressly weigh a medical opinion, were reversible. Id. The Tenth Circuit found that while the ALJ did err in failing to specifically discuss relevant details, the ALJ's general conclusion was supported by the evidence. Id. The Tenth Circuit determined that if an error will not affect the outcome of a case, then the error is harmless and not grounds for reversal. Id. at 1173.

Here, the ALJ did not specifically discuss obesity in her analysis, but her failure to do so is harmless error, if error at all. First, the ALJ was aware of plaintiff's elevated BMI and mentioned it in her opinion. (R. 18). The ALJ also relied on medical records that noted plaintiff's BMI. (R. 337). Thus, it is clear that the ALJ considered plaintiff's obesity. Furthermore, even when the ALJ directly asked how plaintiff felt his weight was impacting his back and knees, plaintiff simply responded, "[m]ore weight more pressure." (R. 39). The only other mention of any impact on plaintiff caused by his obesity is plaintiff's statement that he believes the electric carts he uses for grocery shopping run out of battery quickly because he weighs so much. (R.

45). While almost every medical report mentioned plaintiff's BMI, there was no indication that his weight affected any of his other impairments or created any limitation the ALJ did not address. Thus, the record supports the ALJ's conclusion.

## CONCLUSION

For the foregoing reasons, the ALJ's decision finding plaintiff not disabled should be AFFIRMED.

SO ORDERED this 7th day of March, 2016.

_____
T. Lane Wilson
United States Magistrate Judge

10